Sheets et al. *v.* Sheets et al.

[No. 16,137. Filed November 6, 1939. Rehearing denied February 15, 1940. Transfer denied April 1, 1940.]

*Mountz & Mountz,* and *W. D. Stump,* for appellants.

*Atkinson & Sanders,* and *Dan M. Link,* for appellees.

Laymon, J.—On February 13, 1932, Martin C. Sheets was the owner of certain real estate situated in DeKalb County, Indiana, and on said date he and his wife, Cynthia Sheets (appellee), entered into a written contract with appellees Nina Burnham and Maurice C. Burnham for the sale of this real estate. The contract, omitting the description of the real estate, attesting clause, signatures, and jurat, is as follows:

"This agreement made and entered into the 13th day of February, 1932, by and between Martin C. Sheets and Cynthia Sheets, his wife, first parties; and M. C. Burnham and Nina Burnham, his wife, second parties; witnesses:

"That for and in consideration of the payment as herein provided by the second parties of the sum of $6,000.00, the said Martin C. Sheets has sold and agreed to convey to the second parties the following described real estate in DeKalb County, State of Indiana, to wit:

"[Real estate.]

"It is agreed that, subject to the terms and conditions herein named, the first parties and the second parties shall ·continue to reside in the dwelling house on the said described premises, but that except for such use of the said dwelling house, and garage, the parties of the second part shall be given possession of the said described premises upon the execution of this agreement and the payment of the cash first payment on said purchase price as herein provided.

"It is agreed that in the use of said dwelling house the first parties shall have as their private living room the ground floor bedroom and adjoining bath with connecting clothes closed [closet] and the living room which is adjacent to said bedroom and which suite is located on the north and west part of the ground floor of said dwelling and that the second parties are to have as their private living quarters, the east part of the first and second floors of said dwelling, which comprise the first floor living room, hall and clothes closets and the second floor bedroom, clothes closet, bath and stair landing. The remaining second floor bedrooms located on the south and north of the house and the ground floor dining room, butler pantry and kitchen are to be used by the said parties in common. The first parties shall furnish the rooms to be occupied by them and the remainder of the house shall be furnished by the second parties.

"It is agreed that except as they have said separate living quarters as above provided, the

said parties shall live as one family, taking their meals together and that the second parties shall pay all of the household and living expenses.

"For boarding the first parties and paying the household expenses, which shall include all fuel, lights, and incidental household expenses, the cost of food and any domestic help that shall be employed, the first parties shall pay the second parties, while they are living together in said dwelling house as aforesaid, the sum of $40.00 per month which shall be paid by the first parties giving to the second parties a credit for the sum of $40.00 upon the balance of the principal of said purchase price.

"The first parties shall have the right and option, at their own election and not otherwise, to live elsewhere than in said dwelling house on said premises, and if, while both first parties are living, they shall at any time live elsewhere, then the second parties shall pay to the first parties the sum of $40.00 per month during such time as they shall live elsewhere, and which sum of $40.00 per month thus paid shall be credited as a payment upon the principal of the balance of the unpaid purchase price for said premises.

"The second parties shall have the right and option to live elsewhere, and if they shall so elect to do, and if during said time that the second parties are living elsewhere the first parties shall live in the dwelling house on said premises, then during such time as the second parties shall live elsewhere and the first parties shall reside in said dwelling house on said premises, the second party shall pay to the first parties the sum of $30.00 per month to be applied upon the balance of the purchase price for said premises, and credit shall be given to said second parties of the additional sum of $10.00 per month as rental for the use of said dwelling house by the first parties and which shall be credited upon the balance of said purchase price of said premises, making a total credit upon said purchase price of $40.00

per month and which shall be credited upon the principal thereof.

"In the event of the death of either of said first parties the survivor shall have the right to occupy the said living quarters in said premises as herein provided, and may live with the second parties and receive his or her board and said second parties shall pay the household expenses as herein provided, and for furnishing said support to said survivor, and the payment of said household expenses, the parties of the second party shall receive a credit of $25.00 per month upon the principal of the balance of said purchase price remaining unpaid and in addition thereto the second parties shall pay to the said survivor the additional sum of $15.00 per month, to be credited upon the balance of the said principal indebtedness.

"If said Martin C. Sheets shall survive said Cynthia Sheets and shall elect to live elsewhere than in said dwelling house, the second parties shall pay to him the sum of $40.00 per month, which shall be credited upon the balance of the principal sum of said purchase price.

"In the event of the death of both of said first parties the second parties shall continue to make the said payment of principal and interest at the same rate as herein provided for, such payment to be made to the estate of or to the devisees or heirs at law of the said Martin C. Sheets, provided that in that event the second parties shall have the right to pay the entire balance of said purchase price to the heirs or devisees of said Martin C. Sheets at any time they shall elect.

"The unpaid balance of said purchase price shall bear interest at the rate of six (6) per cent per annum, payable quarterly in advance to the said Martin C. Sheets or to his heirs or devisees in the event of his death, and which interest shall be computed and paid upon the principal sum remaining unpaid at the beginning of each quarterly period.

"It is agreed that said purchase price of

$6,000.00 shall be paid as follows; Second parties shall pay the sum of $660.00 in cash upon the execution of this agreement and shall assume and hereby agree to pay a mortgage debt against said real estate held by the Auburn State Bank in the sum and amount of $1,000.00 and upon the payment by them of said mortgage debt, or any renewal thereof or any mortgage substituted therefore, the second parties shall be credited with said sum of $1,000.00 as payment upon said purchase price.

"If the second parties shall at any time desire to renew said mortgage of $1,000.00 or any part thereof or obtain a loan upon mortgage security for the purpose of paying said mortgage of $1,000.00 or any part thereof, then the first parties agree to execute any new notes, mortgage or other additional instruments in writing that may be required of them in order to lawfully make said renewal or obtain such other or new loan.

"It is expressly agreed that the second parties shall not permit the attaching of any mechanic's or other liens against the said premises without the express consent of the first parties and that if they shall contract for any labor or material for the making of improvements upon said premises that the laborers or material men shall not have any right to a mechanic's lien against said premises.

"The second parties agree to pay all taxes assessed against the said real estate and all other lawful assessments levied against the same that shall become due after the execution of this agreement and agree to keep the buildings on said premises in a reasonably good state of repair and to keep them insured against damage by fire for the protection of the first and second parties as their several interest shall appear.

"The first parties agree, upon the execution of this agreement and contemporaneous therewith, to execute a deed of conveyance, conveying the said described real estate to the second parties and to deposit said deed, together with a copy of

this agreement, in escrow, with City National Bank of Auburn, Indiana, or any successor in said trust that may be lawfully designated or appointed, to be held in escrow and to be delivered to the second parties, their successors or assigns, upon the full performance of all of the terms, conditions and covenants of this agreement. They further agree that in the event of the death of either or both of the said second parties that they will, upon the demand of the survivor, or in the event of the death of both of said second parties, upon the demand of their heirs or devisees, successors or assigns, execute a deed conveying the said premises to said survivor, heirs, devisees, successors or assigns and deliver and substitute such deed in escrow with the said City National Bank or its successor in said trust, and upon any such execution and delivery in escrow of such additional deed, the said deed executed and placed in escrow contemporaneous with the execution of this agreement as herein provided for, shall be cancelled and become of no effect.

"The receipt of the cash payment in the sum of $660.00 heretofore mentioned herein is acknowledged by the signature of the said Martin C. Sheets hereto; and it is hereby agreed that possession of the said premises shall be delivered to the second parties as in this contract provided on the 1st day of March, 1932, and that the computation of the interest on the unpaid balance, as in this contract provided shall start as of March 1, 1932.

"It is expressly agreed by and between said first parties that the provisions made for and the considerations to be received by said Cynthia Sheets by the terms of this agreement shall be, and are, accepted by her as full settlement, payment and satisfaction of all the rights and benefits that shall accrue to her as the widow of said Martin C. Sheets, if she shall survive him as such widow, and that she accepts the same in lieu and instead of her widow's rights of every kind, either at law or by descent.

"It is further expressly agreed that this contract does not provide for the employment of a nurse or physician's services or hospitalization in the case of the sickness of the first parties or either of them, except at the expense of the first parties; that if a nurse be so employed by first parties or either of them and be maintained in the said home, the said second parties shall be entitled to reasonable compensation for the board, room and laundry of such person, or persons.

"It is further provided that in the event of the death of said M. C. Burnham, the balance of the principal of the purchase price remaining unpaid may be by the survivor of second parties paid in full in a lump sum, this contract to be thereby fully satisfied and terminated, or, at the option of the first parties or survivor of them, first parties may retain the said real estate and terminate this contract by reimbursing the surviving second parties for all moneys paid hereunder upon the principal of said purchase price and such reimbursement may be by way of mortgage upon the aforesaid real estate securing notes therefor with principal and interest due at the death of said Martin C. Sheets, such mortgage to be second only to the aforesaid Auburn State Bank mortgage in the sum of $1,000.00.

"It is further expressly stipulated and agreed that if the second parties, or their successors or assigns, shall at any time make default in the performance of this agreement or in the payment of any amount or amounts owing by them thereunder for a period of twelve months, that such failure on their part shall, at the option and election of the said Martin C. Sheets or his personal representatives, heirs, devisees, successors or assigns, operate as a forfeiture of all of the rights and interests of the second parties under this agreement and in and to the real estate therein described and that all payments made by such second parties shall be retained as payment for the rents and use of said property and as liquidated damages, and that upon such forfeiture the

said Martin C. Sheets, or his personal representa-
tives, heirs, devisees, successors or assigns shall
have the right to re-enter and re-take possession
of said premises free from any claim or claims
of the said second parties, their heirs, devisees,
successors or assigns.''

Martin C. Sheets and his wife, Cynthia Sheets, had
no children by their marriage, but each had been pre-
viously married, and each had issue by such previous
marriage. Appellee Maurice C. Burnham is the son of
Cynthia Sheets, and at the time of the execution of
the foregoing contract, he and appellee Nina Burn-
ham were husband and wife. Appellant Barton Rus-
sell Sheets is the son of Martin C. Sheets, and appel-
lants Mary Ellen and Annise Sheets are his grand-
children, daughters of a deceased son.

In February of 1933, Martin C. Sheets died testate,
leaving surviving him his wife, Cynthia Sheets, his
son, Barton Russell Sheets, and his grandchildren,
Mary Ellen and Annise Sheets. His last will and
testament was duly probated, by the terms of which
he bequeathed and devised all of his real property to
appellants Barton Russell Sheets and Mary Ellen and
Annise Sheets. His will, among other things, pro-
vided:

''By the terms of an agreement made and en-
tered into between my wife Cynthia Sheets and
myself and Maurice C. Burnham and Nina Burn-
ham, husband and wife, on the 13th day of Febru-
ary, 1932, provision has been made for my said
wife and she has accepted said provisions of said
contract as full satisfaction of all her interest in
my estate and as my widow and has released any
and all claims to any interest in my estate as my
widow or under the laws of descent, and I there-
fore will and direct that she shall take no other
interest in my estate except the benefits and pro-
visions for her made in said contract.''

On May 1, 1936, appellants, as the sole and only beneficiaries and legatees of Martin C. Sheets, deceased, instituted this action, by a complaint in two paragraphs, to have their title to the real estate included in the contract quieted and the contract for the sale of said real estate declared forfeited. Appellee M. Neal Gordon was made a party defendant because of an alleged assignment or transfer to him in writing by appellees Burnham of a one-half interest in the contract in question and in their equity in the real estate. Before the institution of this action appellee Nina Burnham obtained a divorce from appellee Maurice C. Burnham. Appellees appeared and filed separate answers. To the affirmative answers appellants filed replies, and upon the issues thus joined the cause was submitted to the court for trial without the intervention of a jury. Upon proper request the court made a special finding of facts and stated its conclusions of law. The court concluded that the law was with the appellees; that the appellants should take nothing by this action; and that appellant Barton Russell Sheets had a lien on the real estate for the amount of taxes paid by him in the sum of $357.52, as of March 22, 1935. Judgment was rendered in accordance with the conclusions of law, except that the lien for taxes was not carried forth into the judgment.

Appellants excepted to each conclusion of law and in due time unsuccessfully moved for a new trial upon the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law and error of the court in rejecting certain testimony. Appellants then perfected this appeal, assigning as error that the trial court erred in each of its conclusions of law and in overruling their motion for a new trial.

Appellants assert the right to have the contract in

question declared forfeited and their title to the real estate referred to in said contract quieted as against all of the appellees, upon succeeding to the rights of Martin C. Sheets as his sole legatees and devisees, and upon the showing that appellees Burnham and their assignee had made certain defaults in the performance of the terms and conditions of the contract on their part to be performed.

From the facts as disclosed by the record, Martin C. Sheets, appellants' testator, in February of 1932, desiring to make suitable provision for himself and his wife during their declining years, and, to make certain provisions for the benefit of his wife, in lieu of her statutory interest in his estate as his surviving widow, and, to exact from her a release of any and all of her interest, or claims to any interest, in his estate which she might have or might assert as his surviving widow, under and by virtue of the laws of descent of the state of Indiana, entered into the written contract in question, by the terms of which he and his wife sold and agreed to convey to appellees Burnham the real estate involved for the consideration of $6,000. By the express terms and provisions of the contract, Martin C. Sheets and his wife, as long as they, or either of them, lived, were entitled to certain benefits which would accrue from time to time. They were entitled, under the contract, to live in and be maintained in the home situated on the real estate, as long as they, or either of them, lived, for which the vendees were to be credited on the contract at the rate of $40 per month; or, if they chose to live elsewhere, they were to be paid in cash the sum of $40 per month. In the event of the death of either Martin C. Sheets or his wife, the survivor was to be entitled, in addition to support and maintenance in the home, to the sum of $15 per month.

Appellee Cynthia Sheets, as surviving widow, made no claim to any interest in the estate of her deceased husband, other than to such interest as given her by the terms and conditions of the contract in issue, and so far as the record discloses, she made no election to retain the rights in her husband's estate given to her under the laws of the state of Indiana.

In view of these facts, the question presented necessarily resolves itself into whether or not the appellants are entitled to a judgment declaring a forfeiture of the contract, which forfeiture would necessarily affect the rights of the surviving widow given to her by the contract.

In the consideration of this question, it is to be noted that there is no claim that Cynthia Sheets has made any default in the contract; nor has any default by her been shown. According to the terms of the contract, she sustained no relation to the vendees that would bind her by any default which they might make. There was no issue submitted to the trial court whereby she claimed or asserted any default in the contract as against the appellees Burnham.

Furthermore, it is apparent that if a forfeiture were decreed as prayed for, there would be no contract. This result would defeat all of the interest which Cynthia Sheets has, or might have, by virtue of the contract and deprive her of any and all benefits which she is, or might be, entitled to under and by virtue of the terms of said contract at the hands of the vendees or their successors in interest. Upon the death of her husband the rights given to her by the contract became vested. She accepted the benefits and considerations provided for her in the contract in lieu of her rights under the laws of the state as his surviving widow.

These facts lead to but one conclusion. Whatever

right the appellants had as heirs, devisees, or legatees of the decedent, Martin C. Sheets, was subordinate and inferior to the right of the surviving widow, and a forfeiture of the contract cannot be declared which would deprive appellee Cynthia Sheets, as surviving widow, of the benefits accruing from the contract.

Appellants contend that in this action appellee Cynthia Sheets did not see fit to have her rights against her son and former daughter-in-law and Gordon determined, as she might have done by filing a cross-complaint against them, "but instead she has elected to unite with them and to assist them in avoiding the plain terms of the contract."

It is true, as appellants contend, that Cynthia Sheets made no complaint, nor did she seek any relief in the trial court for the nonperformance of the contract. This situation, however, would not justify the court in ignoring the widow's rights or setting them aside by declaring a forfeiture of the contract.

Appellants insist that the trial court erred in refusing to require appellee Cynthia Sheets to testify as to what, if any, payments were made to her after the death of her husband, either upon the contract in question or upon the note owing to her by her husband and referred to in a memorandum attached to the contract.

As heretofore pointed out, there was no issue presented whereby appellee Cynthia Sheets was asserting or claiming a default for the nonperformance of the contract or asking relief against those who were by the terms of the contract required to make such payments, or their successors in interest.

Appellants did not succeed to the rights of appellee Cynthia Sheets, nor had they any right or capacity to represent her interest, either in the contract or in the estate of her deceased husband. The rejected testi-

mony would not have been material to any issue, and it was not error to exclude it.

Complaint is made of the court's second conclusion of law—that the appellant Barton Russell Sheets has a lien on the real estate for the amount of the taxes paid by him in a specified amount—on the ground that said conclusion is entirely outside the issues. Upon examining the judgment rendered by the trial court, we find that this conclusion was not carried into the judgment.

No reversible error having been shown, the judgment of the trial court is in all things affirmed.